USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NEW YORK CITY HEALTH AND HOSPITALS :
CORPORATION,

                Plaintiff,      :    15cv662

          -against-      :    MEMORANDUM & ORDER

SYLVIA MATHEWS BURWELL, as Secretary of
the United States Department of Health and Human :
Services

               Defendant.     :
------------------------------------X
WILLIAM H. PAULEY III, District Judge:

        The New York City Health and Hospitals Corporation ("HHC") operates the municipal hospital system in New York City and provides health services to Medicare beneficiaries. HHC seeks judicial review of the Secretary of the United States Department of Health and Human Services' (the "Secretary's") determination denying HHC certain Medicare reimbursements. Both parties move for summary judgment under Fed. R. Civ. P. 56. For the following reasons, HHC's motion is granted, the Secretary's motion is denied, and this action is remanded to the Secretary for further review.

BACKGROUND

        The Medicare program, established under Title XVIII of the Medicare Act, reimburses participating health care providers for the "reasonable cost" of providing medical services to beneficiaries. While the Medicare Act does not specify the methods by which "reasonable cost" is determined, it authorizes the Secretary to "prescribe the regulations" for making those determinations. See 42 U.S.C. § 1395x(v)(1)(A). Under the Medicare Act, costs

should not be shifted between Medicare and non-Medicare patients and payors. See 42 U.S.C. § 1395x(v)(1)(A)(i); 42 C.F.R. § 413.50 ("This result is essential for carrying out the statutory directive that the program's payments to providers should be such that the costs of covered services for beneficiaries would not be passed on to non-beneficiaries, nor would the cost of services for non-beneficiaries be borne by the program.").

In 1966, the Social Security Administration ("SSA") promulgated regulations for apportioning costs incurred by healthcare providers to Medicare. See 42 C.F.R. § 413.50. Those regulations recognized the obvious—"Medicare beneficiaries are not a cross section of the total population." 42 C.F.R. § 413.50. The regulations acknowledge that, on average, patients over 65 years old stay "in the hospital twice as long" as patients who have not reached the age of 65. Accordingly, the ancillary services[1] utilized by older patients are "averaged over the longer period of time, resulting in an average per-diem cost for the aged alone, significantly below the average per-diem for all patients." 42 C.F.R. § 413.50. In 1968, the Bureau of Health Insurance ("BHI") issued Intermediary Letter 321, which established five alternative cost apportionment methods—denominated A through E.

This dispute centers around Method B. Hospitals with "all-inclusive rates"—or limited billing functionality—are eligible to use Method B in determining ancillary costs. Under Method B, ancillary costs are apportioned to Medicare using an average per diem cost adjusted by a weighted average, which is based on a comparison of the average length of stay ("ALOS") of Medicare patients to the ALOS of the entire patient population. Method B rests on the regulatory presumption that older patients are generally hospitalized for longer periods of

---

[1] Ancillary services include, inter alia, laboratory, radiology, drugs, delivery room, operating room, and therapy services. (Administrative Record ("AR") at 7.)

time, and therefore require fewer ancillary services over the latter portion of their hospital stay. Originally, Method B did not contain a cap limiting apportionment of ancillary costs where the ALOS for Medicare patients was less than the ALOS for all patients. In 1971, BHI issued Intermediary Letter 71-25, adding a "weighted discharge cap" to Method B.[2]

In 1976, Intermediary Letters 321 and 71-25 were incorporated into the Provider Reimbursement Manual ("Reimbursement Manual"). In a paradigm of government-speak, Section 2208 of the Reimbursement Manual provides:

> When using the sliding scale method to determine Medicare ancillary costs, the hospital would:
>
> 4. determine the weighted average percentage of average per diem ancillary costs for Medicare patient in the following manner:
>
>   a. multiply the average length of stay for all patients by 100 percent to determine a weighted percentage;
>
>   b. the difference in the number of days between the average length of stay for patients 65 years or older and the average length of stay for all patients must be multiplied by 75% to determine a weighted percentage;
>
>   c. the total of a. and b. above will produce a total weighted value for the average length of stay for patients 65 years or older.
>
> This weighted value must be divided by the average length of stay for patients 65 years or older to produce the percentage to be applied to the ancillary average per diem cost.
>
> *This percentage can be less than, but cannot exceed, 100 percent of the average ancillary per diem cost. Where the length of stay for Medicare inpatients is less than the average length of stay for all inpatients, the percentage derived under this formula would be 100%.*

---

[2]   "Method B – Sliding Scale Method. The Sliding Scale Method is used to arrive at a percentage of ancillary average per diem costs as a basis for Medicare reimbursement for ancillary services. This percentage can be less than, but cannot exceed, 100 percent of the average ancillary per diem cost. Where the average length of stay for Medicare inpatients is less than the average length of stay for all inpatients, the percentage that would be derived under the formula authorized by [Intermediary Letter] 321 would be 100 percent." (See AR at 8.)

3

(See AR at 9–10) (emphasis added).) The legal effect of the italicized language, known as the "weighted discharge cap," is at issue on these motions.

## PROCEDURAL HISTORY

HHC is comprised of "all-inclusive rate providers that do not have departmental charges that would allow the apportionment of costs based on charges." (See Administrative Record ("AR") at 105.) Because HHC lacks the accounting discipline to apportion ancillary costs, it employs Method B under Reimbursement Manual Section 2208. From 1999 through 2007, fiscal intermediaries ("Intermediaries") applied the weighted discharge cap to HHC's ancillary costs in making payments to HHC.[3] For reasons shrouded in beadledom, HHC failed to appeal the Intermediaries' determinations to the Provider Reimbursement Review Board ("PRRB") for nearly 15 years. When HHC finally awoke, it challenged the Intermediaries' determinations, contending that, as applied to hospitals where the ALOS for Medicare patients was less than the ALOS for all patients, Method B's weighted discharge cap violated the Medicare Act and the Administrative Procedure Act.

In September 2014, the PRRB sustained HHC's challenge and concluded that the Intermediaries had improperly applied the weighted discharge cap to HHC's ancillary costs. (See AR at 97–117.) The PRRB found that the weighted discharge cap was added to the "Method B cost apportionment methodology 3.5 years after that methodology had been issued and [the Secretary] has never provided any explanation for the addition of the cap at that later date." (See AR at 113.) Further, because "some Medicare patients (Medicare ALOS shorter than all inpatient ALOS) incur higher than average per diem ancillary costs," the application of

---

[3] Intermediaries are contractors designated to perform Medicare's payment and audit functions.

4

the weighted discharge cap violated Medicare's principle of "reasonable cost" reimbursement and the prohibition against cost-shifting between Medicare and non-Medicare patients. (See AR at 113.)

During the 60-day mandatory comment period, the Chronic Care Policy Group of the Centers for Medicare and Medicaid Services ("CMS") and the Intermediary requested reversal of the PRRB's decision. The Secretary reviewed the PRRB's decision through the CMS Administrator.

In November 2014, the CMS Administrator, on behalf of the Secretary, issued an 11-page decision reversing the PRRB. (See AR at 2–12.) The Secretary found that "the Providers have the burden to use a more sophisticated method of apportioning costs to establish that their actual costs of Medicare patients is higher than that calculated under Method B." (See AR at 10–11.) Further, HHC failed to "demonstrate through the selection of a more sophisticated Method A that [it] w[as] entitled to additional cost-reimbursement." (See AR at 11.)

HHC filed this action challenging the Secretary's decision reversing the PRRB.

LEGAL STANDARD

Summary judgment is warranted when a moving party shows that "there is no genuine dispute as to any material fact" and that the party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Cortes v. MTA New York City Transit, 802 F.3d 226, 230 (2d Cir. 2015). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 39–40 (2d Cir. 2015) (citing Anderson, 477

5

U.S. at 248). "[W]here the non[-]moving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by point[ing] to an absence of evidence to support an essential element of the non[-]moving party's case." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014) (internal citations and quotations omitted).

## DISCUSSION

The Secretary's interpretation of the Medicare Act should be accepted unless it is "arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). While this Court may not substitute its own judgment for that of the Secretary, it is required to assess whether the Secretary's decision was based on a consideration of all relevant factors and whether the Secretary made a clear error of judgment. See Citizens to Preserve Overton Park, Inc., v. Volpe, 401 U.S. 402, 416 (1971).

HHC contends that the weighted discharge cap upheld by the Secretary violates Medicare's "reasonable cost" provision, is inconsistent with the application of the original Method B in 1968, and constitutes "arbitrary and capricious" agency action. By upholding the cap, HHC's Medicare reimbursement is limited to the amount of the average per diem ancillary costs for all inpatients. HHC argues that this results in under-reimbursement where the ALOS for Medicare inpatients is shorter than the ALOS for all inpatients. In sum, HHC asks this Court to adopt the reasoning of the PRRB, not the Secretary.

The Government counters that the Secretary's decision should be upheld because: (1) the Secretary had authority under the Medicare Act to establish Method B and its weighted discharge cap; (2) the Secretary's decision is in accord with Medicare regulations; (3) the legislative history supports the Secretary's decision; (4) the Secretary's decision is consistent with the HHC's statutory documentation obligations to use a method more sophisticated than

Method B to apportion costs; (5) the Secretary's decision is consistent with the historical interpretation of Method B; and (6) the Secretary considered the reasonableness of HHC's reliance on its interpretation of Method B. (Govt's Reply Br. at 3–4 (citing AR 10–11).)

In reviewing the Secretary's decision, this Court "must judge the propriety of [that decision] solely by the grounds invoked by the [Secretary]." Burlington Truck Lines, Inc. v. United States, et al., 371 U.S. 156, 169 (1962); SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). While the Secretary's decision spans 11 pages, her analysis is confined to two paragraphs. (See AR 10–11.) And although the Secretary reviewed the "entire record" (see AR at 5), her decision rests on the Chronic Care Policy Group's argument that the weighted discharge cap was designed to be temporary. The Secretary adopted the Chronic Care Policy Group's rationale:

> The Provider[s] chose not to change their charge structure and recordkeeping practices. The administrator finds that for the cost-reporting periods at issue in this case, [Providers could have] adapted to the statistical Method A as their permanent method of cost apportionment. The Providers in this case did not demonstrate through the selection of a more sophisticated Method A that they were entitled to additional cost-reimbursement. (AR at 11.)

While the Government argues that the Secretary considered Method B's legislative history and historical interpretation, the Secretary's decision is bereft of any such analysis. Instead, the Secretary concludes that HHC forfeited its right to challenge Method B because HHC should have changed its method of cost-apportionment, and had a legal requirement to update its bookkeeping systems. (See AR at 11.) Intermediary Letter 321 provides that HHC is required to use the most sophisticated method available to it. (AR at 72–

7

81). See also County of Los Angeles v. Sullivan, 969 F.2d 735, 743 (9th Cir. 1992). But the administrative record sheds no light on whether HHC could have changed its recordkeeping systems during the time period at issue.

This Court declines to credit the Government's "post hoc rationalizations for agency action[, because] Chenery requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." Burlington Truck Lines, Inc., 371 U.S. 156, 169. While the Government's briefing offers a mélange of reasons for the Secretary's reversal of the PRRB, it appears that the Secretary focused on only one of those reasons in her decision—namely that HHC was obligated to use, and could have used, a method more sophisticated than Method B to apportion costs. And that reason is not supported by the Administrative Record. Many of the other arguments raised by the Government are not even mentioned in the Secretary's analysis. Accordingly, this Court finds that the Secretary's decision to reverse the PRRB decision is not supported by the record.

Conceding that the Secretary's decision is "admittedly terse"—an understatement—the Government urges this Court to remand to the Secretary for additional investigation or explanation. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

This Court agrees that remand is appropriate. This conclusion is reinforced by the Government's contention that the Secretary recently identified "additional historic documents . . . which indicate that Method B was never intended to result in a reimbursement rate higher

8

than 100% of the average per diem[.]" (Govt's Reply Br. at 12–14.) Such documentary evidence may be relevant to any historical interpretation of Method B and might also alter the PRRB's decision. Indeed, in holding that the weighted discharge cap violated the principle of reasonable cost reimbursement, the PRRB observed "at the outset," that "[w]ithout knowing the rationale for the cap, the Board cannot give it great weight and declines to do so . . .". (AR at 113.) And in 1992 the Ninth Circuit found the Secretary's use of the weighted discharge cap under Method B to be inconsistent with Medicare statutes and regulations. That determination was based—at least in part—on the Ninth Circuit's finding that the Secretary had failed to explain "the purpose of the [weighted discharge cap] fully." See County of Los Angeles, 969 F.2d at 743. Newly discovered documents may illumine the reasons behind the addition of the weighted discharge cap in 1971. They should be considered on remand.

## CONCLUSION

For the foregoing reasons, Plaintiff New York City Health and Hospitals Corporation's motion for summary judgment is granted, and Defendant Secretary of the United States Department of Health and Human Services' motion for summary judgment is denied. The Secretary's decision is vacated and the case is remanded in accord with this Memorandum & Order. The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: March 29, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record.*

9